Thank you, Ron. This case needs to be sent back for a new trial on the real facts and not the sanitized facts that the jury got to hear the first time around. The jury didn't get to hear the whole story in the first trial because the district court reduced powerful evidence to benign insinuations with two of its pre-trial rulings, and that was the ruling excluding the bias evidence and the ruling excluding the marriage evidence. And that evidence was critical because it went to the credibility of Gary Rogers. And this case does not happen without Gary Rogers. He was the only witness who testified on the to deal with the RGC money as she saw fit. Her side of the story was, in this family, the wife handles the finances. And he denied that on the stand, but no other evidence went to that issue. And that authority was key to the issue of intent to defraud. It was the only evidence on that that rebutted Kim's version of the story. What about the documentary evidence that she was the sole signatory and that she had it in her P.O. box, unlike, I think, any of the other accounts that were the business used? She explained that. She explained, for one thing, on the P.O. box, she explained that she did not give the P.O. box address to the person when she was opening up the account, but that maybe it was auto-populated just when her information was put in as the person opening up the account. Does that answer your question? Well, it's an answer. We'll tell you later if it's a good answer. But I appreciate that. I appreciate the testimony you pointed me to. There were evidence on both sides of that issue. It was not conclusive on one side or the other. So, yes, the account information opening had her information, but there was other stuff on there that she explained, too, that was a mistake, like that they had the government claim that she had given the DBA to open the account, but the number on the documentation referred to the power attorney that Gary had given her. And why go to a different bank than the one the business had already used? What was her reason for that? She said that RGC wanted to get credit from Wells Fargo, and if you want to have an account – if you want to get credit from Wells Fargo, you have to have money there. That was her explanation. So that was another point that was refuted. So my point is, if you have a trial on cleaned-up facts, the jury doesn't get to hear the real story. And there was powerful evidence of bias that the jury was shielded from in this trial. And that evidence was that prior to detection of the offenses that were charged, Gary Rogers had threatened to kill Kim more than once. On one occasion, he bit her nose, he choked her in front of her little boys, he held her at knife point on another occasion, he pushed her and threatened her in front of her co-workers at her job, and he sent her extremely abusive voicemail messages. There's a bunch of them in the brief, but one of them begins, hey you bitch, cunt, motherfucker. He threatened repeatedly in the voicemail messages to manipulate the justice system to get revenge against her. And he said falsely that he was talking to the FBI, he was talking to the IRS, and he had two police officers on his payroll. Anything that would undermine Gary Rogers' credibility should have been open season for cross-examination at the trial of this case. Counsel, you said anything, which probably means everything, but it seems to me it's within the trial judge's discretion, and our issue is whether he abused it. In deciding whether more evidence needed to be introduced on the acrimony between these two individuals was introduced, do you accept that some evidence of the bitter relationship between the two by the time of these proceedings was introduced? There was evidence of acrimony, but not of all the sources of acrimony. But that's the point. All the evidence did not have to come in, in most cases, of one particular point, one particular issue here, the relationship between the two parties. And some of that evidence came in, and it's up to the district judge to control it. So why is this particular evidence more probative? Is it just that there's more of it? What's the real question, you think, for us on whether the discretion was abused? Whether it was different evidence. So if you look at Bodine... What do you mean by different? I mean it's additional evidence. It's different in that it's a different source of a reason to be biased against him. So the evidence that came in was about whether or not they had acrimony in their relationship. There was evidence on that, but not evidence that he had been violent towards her, which would be a different source. Whether or not there was jealousy on his part, which he was going to spin it. You don't have to take the word of the witness when you ask the question. That's why in biased cases, extrinsic evidence is always admissible. So let me go back to Bodine. In Bodine, they had evidence to impeach the credibility of Murphy, the contractor who testified in that case. But there were other sources to attack his credibility, and the defense was limited. That's her constitutional right to examine the witness on the witness's motives for testifying falsely. And in this case, the examination was limited, and Your Honor, you said an abuse of discretion. The question is abuse of discretion only if it's a question of limitation of cross-examination, where there's other evidence. The question is a constitutional issue if there's a limitation on the source. And here, that's what we have is different sources that were not allowed to be examined, because Kim Boyce wasn't allowed to introduce that. The evidence of violence, that was another source for sure. And the threats— Let me ask you this. Are you saying there's a constitutional right, whenever there's a new witness, that witness must be allowed to testify even though the judge might think the evidence is cumulative? Is that what you mean by source? Every time there's a new point of origin, a new witness saying something new, that will bolster evidence that's already present? That's a constitutional confrontation right involved? That's not what I'm saying. Because in that case, it could be cumulative. What I'm saying is that there was a different reason for him to be biased. He was embarrassed about the—in the breakup. He wanted revenge against her. And that goes to—there were two things. Number one, the sources were limited because the violence was not let in, and that would have been another source of reason for bias. And the other thing is that the trial judge said that they had to take Gary's word for it. So when they asked Gary on the stand, you threatened Kim, didn't you? He said, no. I just told her what was going to happen. Whereas the—if you look at the voicemail messages, there are transcripts of threat after threat after threat to use the justice system. He said, I'm going to throw you in jail. I'm going to throw you under the jail. So what we have is a different source, and I think that that's more like Bodine, where they said, you can—the fact that you the contractor had a bunch of previous convictions, that's not enough if four and five are limited. So it's not just more evidence on the same source. It was different evidence that showed a different reason for him to fabricate his testimony. And if this evidence would have come in, the jury would have known, there wasn't anything. There was no point beyond which Gary Rogers would go to hurt Kim. And that goes mostly ruled on at the motion in limine stage. Then there was an attempt to get it in again during trial. But at the motion in limine hearing, it seemed like the primary reason the defense was urging the introduction of these text messages was because, I think there's direct quotes, that it would paint him as misogynist and racist, basically show what a bad guy he is. And so I read the district judge says, well, no, you can't just dirty someone up like that. Now you're presenting it as a bias issue. Where in the motion in limine hearing was it presented as bias evidence, as opposed to him being a misogynist and racist? He said bias. And he said bias throughout the time that this was discussed at trial. And the cases that he cited, number one being United States v. Abel is a bias case. So he was talking about bias the whole time. And I think—I don't want to misspeak about what he said about him being a misogynist and a racist, because this does show that he is, by the way. But what the Supreme Court has said is if evidence comes in because it's bias evidence and it's admissible for that reason, it doesn't become subsequently excludable because it also shows other bad stuff, like the guy— Well, every evidentiary ruling is subject to 403 balancing, right? Yes, it is. But 403 is about unfairly prejudicing the jury, not embarrassing the witness. And what the government said in its motion in limine is this would harass Gary. Gary was going to get on the stand and he was going to be confronted with his abusive, raging rants and the fact that he was violent, and that was going to embarrass him. And you never say, well, the embarrassment of the witness—you don't weigh that against a constitutional right of a defendant to examine a witness about his motives for lying or possible motives for lying, which is what she was trying to do in this case. So the bias issue was—that was the first thing. It was United States v. Abel all the way. And he was saying that bias the whole time. So is there a particular thing that— I don't want to pass by— No, I mean, I've read the limine. It just seems to me there was a lot about trying to He says, you know, you can't just paint him as a bad guy. That's prejudicial. What they were trying to say is that it was prior bad acts, and that ignores the whole thing about bias evidence. Prior bad acts is handled one way if you have just a person who's randomly bad. In this case, you had a person who his bad acts were focused towards revenge against the defendant. And so the first rule of bias evidence is that bias evidence is always relevant. The second rule is that extrinsic evidence of bias is always admissible. You don't have to take the witness's word for it. I have one more question about how this was presented. It seems like it was always presented as we want to put in all these text messages and all this. Was there ever a point in the trial where defense counsel picked out just two or three and said, Judge, I understand you don't want us to get into pages and pages of these, but just these are the best ones for our case? He did not. But I think if he had, it would have painted an unfair picture. Because if you just take the one where he was calling her names that I read a few minutes ago, that text message doesn't say anything else. I mean, that wasn't a text. That was a voicemail message. You have to have the context and show what happened. This goes from December. The incidents start a little bit before that, but most of it is from December through May of 2013 to May 2014. And I think it's important that you have the context of how this progressed. Because he became more enraged, and he started making outlandish allegations. He accused her of sleeping with other people, just seemingly randomly. I mean, there were people that she knew. But the allegations were completely unfounded. So if you ask, that wasn't suggested by the trial court, and it wasn't suggested by the defense, as I read the record. Let me ask you to address the sentencing issues that you have raised and what further beyond your brief you might want us to consider regarding the amount of assets that she returned, otherwise the calculation of the loss. Yes, Your Honor. The first thing about that or the important thing, the first important thing about sentencing and restitution is that we know that the trial court erred. Because the trial court, these are both abusive discretion standards, and the trial court made an error of law and an error of fact. Because he said his only findings on that issue is, I find that the property was stolen. And nobody ever said that the property was stolen. This was property that Kim and Gary bought together that was jointly owned in their names. And what she said is she had turned over full ownership. She owned it as a joint owner. She had turned over full ownership before detection. And the trial judge said it was stolen, and so you don't get a credit. So number one, the government's not saying here, and they didn't say in their briefs or at the hearing that it was stolen, so we know that's an error. And number two, if you do return stolen property, you are still entitled to a credit against loss if you return it before detection. That wasn't the case here. So what the government did is they didn't offer any evidence. They didn't have to because the trial judge fanned against them before they ever even got a chance to say anything. He said, no, it was stolen, and so you're not getting a credit. There's no evidence or any findings regarding the evidence that was returned. And she had detailed evidence on each piece of property that it was in both of their own names prior to detection, that it was turned over to him so he became the full owner, and some evidence of value. And this is preponderance of the evidence standard. The government didn't put on any evidence at the hearing. All they said is Gary paid for it, but there was conflicting evidence on that point. You start out with the presumption, first of all, that when you have joint owners that they're 50-50 owners, and then you had Gary saying I paid for it loosely at the trial, and then you had Kim saying that is not the case. On a credit, it's still the government's burden? No. To disprove a credit? I mean, you're seeking a credit for the property. We are. Whose burden is it then? The burden is on the defendant who wants the credit, but we put in the evidence. The government didn't offer any evidence. You start out with the presumption, like I said, that they're 50-50 owners, and Kim testified when she was asked on cross-examination, she said Gary paid for that, didn't he? And she said no.  I had my own money. I had a job. And she had a full-time job at a business that wasn't on RGC the entire time. And she said that it was her money. She put in detailed evidence about the ownership and detailed evidence about the value, and she got no credit. And the judge, there's a whole section of the government's brief where they talk about, well, this really doesn't prove it. You don't get there. But on a preponderance of the evidence standard, you're pretty low. The fact is the judge didn't look at the sufficiency of the evidence. He made an error saying that the property was stolen when we know that it wasn't, and then saying also that the stolen property is not eligible for a credit. So if you have an error of fact and an error of law, that's an abuse of discretion. This needs to go back at least for the judge to look at the evidence, which there's no evidence that he did in this case. All right, counsel. Thank you. Thank you. Good morning. May it please the Court. This is a classic embezzlement case. In this case, Ms. Boyce viewed Mr. Rogers' assets as her own and consciously sought to embezzle them. During a period when she didn't even work for the company, she surreptitiously went and opened two Wells Fargo's accounts where she was the only signatory. She funneled millions of dollars through those accounts, bankrupting Mr. Rogers. And the evidence supporting that comes from multiple sources. It comes from both documentary evidence, witness, and Mr. Rogers' testimony. In this case, the evidence of bias that the defendants sought to introduce would have been inflammatory and highly prejudicial and irrelevant. There is still not one instance of linking how any of that particular instances, other sources I think was the phrase, would have been any different than the evidence that the jury heard. If you look at the cross-examination. Well, let me ask you this, Mr. Gay. You're saying that it would not be any different evidence. It seems like you're also saying that it's not relevant because the documentary and other evidence. It seems to me that the basic point of this evidence is you can't believe what your witness is saying about his being unaware of the Wells Fargo accounts, that he was a feigning surprise when he went to Wells Fargo and asked initially about this account. So it does seem to me that insofar as that point could have been made with bias evidence, isn't this better evidence that was being offered by Boyce than anything that they were allowed to present, that this kind of relationship had so soured that it's a fair prospect, or at least something for the jury to consider, that he was fabricating his lack of knowledge? One of the critical things to remember in this case is that the embezzlement took place in 2012. All of these text messages and voicemails are in 2014. There is no way, logically, that voicemails and text messages concerning his motive and intent have anything to do with her embezzlement that occurred two years earlier. But in the issue of whether she was embezzling two years earlier, if he were aware of that but not willing to admit it later at the time of trial, the fact that in between those two events, the opening of the accounts and his testifying, he had this destruction of his relationship with the defendant. So I don't see how the years that you're talking about are particularly relevant in the analysis. In this case, whether he used horrible language, whether he had a motive of revenge, for example, doesn't supplant the fact that the jury heard ample and overwhelming evidence that those two were in an acrimonious relationship. And it's thoroughly developed in the cross-examination. But these texts are to a different degree. I mean, I'm sure that's why the government filed a motion in Lemony to exclude them. They were to a different degree. I mean, this is some harsh, vicious language showing deep-seated animosity. And so whether he engaged in extraneous criminal acts, whether they were having an affair, whether all of these sorts of mini-trials that would have been required, the court clearly, under a confrontation analysis or a 403 analysis, as long as it provides an avenue for the defense to assert their defensive theory, there is no requirement that distracting, prejudicial, irrelevant evidence come in. Was there any evidence in that he had threatened to put her in jail? Yes, there was. From who testified? During his cross-examination, if I can just get to that page real quick, I will. He's asked about the police officers. He's asked about whether he burglarized her home, whether he threatened her. And all of that is set forth in our brief. You don't have to look for it now. But, yes, he was extensively cross-examined about all of that. Did you threaten her or compel her to return property? Yes, I did. At various points, he equivocated and said, you know, she came clean. It was cross-examination. The jury got to hear the substance of the fact, and the relationship between the two was extensively explored on cross-examination as well. So I think— Would you explain this? I know I'm cutting you off, but would you explain this caveat or whatever the right label is that the judge stated at the motion and limit hearing that I'm open to hear more about this at trial, I am not going to make a—I'm not going to permit all this to be coming in? It seems to me, picking up on what my able colleague has asked the opposing counsel already about, it seems to me the overwhelming volume of what they wanted to introduce was part of the problem. Was there ever any—do you see the offer made by the judge as permitting a more compact, a more redacted set of these documents to be offered? There was a large filing of information, I believe 30, 35 of these messages, and there was never any attempt during trial to say, Judge, there's been a variance, we'd like to ask, this is relevant to this issue. There was never an attempt to focus out of that entire cache of documents what would have been essential to their defense. There simply just was—that was just not done. In this case, from the beginning to the end, from the opening statements through the closing arguments, the jury knew that these two had a blow-up, was one of the phrases used, that they were in a very heated disagreement, that he had filed a civil suit against her, that he was pursuing criminal charges. And by the way, all of this is really not even part and parcel of the tax counts as well that she was convicted of. So the idea that this would require a remand for a new trial, I don't believe that any of the acrimony goes to the existence of her tax fraud, which is many of the counts in this case. And she did receive a 60-month sentence, which was a downward departure on all of the counts concurrently. But at the end of the day, the evidence of bias in this case is clearly before the jury. Did the defense get to a place inflammatory and potentially misleading in the sense of, as I said, whether people are having an affairs or whether the existence of the truth of those things, for example, whether he choked someone or whether any of that, it was just never established. No witnesses were brought in to say, yes, he choked Ms. Boyce on a certain date. All of them were just rank allegations between the parties. And I think a fair reading is that they were equally engaged in this dispute. And Ms. Boyce clearly took the stand. She gave her version of events. He took the stand. Both were subject to cross-examination. This is not a circumstance where we have an inability to conduct cross-examination of the witness, the subject of the text messages or the voicemails. They were on the stand. So to the extent there are many, many ways to explore the existence of bias and motive outside of putting, as I think the word was, highly embarrassing and perhaps inappropriately distracting information before the jury. And that's what 403 allows the district court to do. So from the constitutional perspective, she was able to present a defense. From a 403 standard, it was not an abuse of discretion. I'm going to ask you about the loss calculation. Regardless of the sort of the end game to it, regardless of the accuracy of the loss calculation, can it be said that that affected the sentence? No, Your Honor, and I'll explain why. The threshold in this case, the guidelines level, was based on an amount of loss of at least 1.5 million. We started off with the figure of intended loss of 2.7 million roughly. In this case, it comes down to a dispute between her calculations of $124,000. If there's $124,000 which the district court properly excluded, there was no guideline error. As we point out in the brief and as reflected at sentencing, there is a $642,000 number for the return of stock, which they admitted they had no proof that those amounts had ever been transferred back to Mr. Rogers. Right there would eliminate any ability for them to get below the 1.5 million threshold for the loss calculation. On top of that, all of the return of property, I think all, was easily after the offense had been discovered. And 2B1.1 specifically talks about that you do not include amounts returned after the offense was likely discovered. And in this case, I think the timeline, as set forth in our brief, certainly shows that virtually all of the things that were returned was the result of his demand that she return those things, having discovered the fraud. But even if you're right about those things for loss calculation, they would be entitled to those reductions for restitution. The timing doesn't affect restitution, for example. So how would you address restitution? So I'd like to begin by saying. I know you also think it's not preserved. Absolutely. There was no objection to restitution. We'd be on plain error. And for the same reasons, the $642,000. So to start off with, for restitution, the amount was $2,039,000 as a starting point. So it was already not the same number as the amount for loss calculation, the starting number. And if you were to take away the same $642,000, which could not be verified, the amount of restitution would once again be correct. And it's clear from the sentencing transcript. And I know there was some mention that the government didn't offer any proof. The district court adopted the pre-sentence report in this case. And so there was ample evidence before the district court about all of this. And so to the extent that there was some discussion about whether it was stolen property or not, ultimately any error, if there was one, was certainly harmless and did not affect the loss calculation in this case and did not affect the restitution order in this case. If there are no further questions, I will yield back my time. We'll take it. We'll rely on our brief, Your Honors. All right, Mr. Kennedy. Thank you. I want to start out by saying that he is wrong to say that the fact that there was cross-examination on some of these issues, like the acrimony, is enough to satisfy the constitutional right that Kim Boyce had to confront Gary Rogers about his motives for testifying falsely. Saying that there was acrimony or turmoil doesn't say what's in these texts and what's in these voicemail messages. They paint an entirely different picture, and the jury was entitled to see the full-blown effect of that in order for Kim Boyce to be able to put on an entire defense. And when Gary Rogers was asked about whether or not he threatened Kim Boyce on cross-examination, he denied it. He said, no, I wouldn't put it that way. I told her what was going to happen, which is a lot different from saying I'm going to use the criminal justice system to get revenge against you. The jury was entitled to hear that and to believe that that's exactly what he was doing, and that's why he was making it up. And that's why their timeline doesn't make any sense. He gave Kim, in their family, the wife handled the finances. He gave her the power of attorney. She was doing what she was supposed to be doing as the wife handling the finances by opening up those accounts so that he could get credit from Wells Fargo. Then later they have the falling out. He becomes jealous. All these different issues come up. And then the traumas after that. That's when he was getting his revenge. He said, I want to get even, and he was getting it even. So I also want to say he said that the willfulness, that there was no evidence from Gary on the tax evasion or that would have made a difference on that, that's where the marriage evidence comes in. That's where the marriage evidence is very important, because if it was his money and he was letting her be in charge of it and spend it for their family. How could she have mistakenly thought they were married? I mean, that's not something that, you know, there's no common law marriage issue. It's just were they officially married or not. How do you not know that as one of the people in the relationship? They were acting like they were married and telling people that they were married and that some of the evidence that was excluded was Gary Rogers giving her a valentine that said to my wife, and even on the stand, Jerry Sherrod, the landlord for the truck yard, he testified that Gary told him that they were married. But weren't they engaged? They were engaged, but they were. If you live together and you tell people that you're married, then there's a presumption that you're common law married or that you're informal married, not common law. And so there was a big discussion at the pretrial conference that goes to that issue of whether or not it was common law or I'm running out of time, and I did have one more point, and I just wanted to say this. I know I'm out of time, but they said that they don't want to have mini-trials about this extrinsic evidence, and that goes directly against decidu, which said that biased evidence is never a collateral matter, and if you have to have a little mini-trial, then that is what it takes to satisfy the constitutional right of these courts. All right. Thank you. Thanks to you both.